# Exhibit "D"



**This page is part of your document - DO NOT DISCARD**

**05 2684465**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
11/07/05 AT 08:00am**

## TITLE(S) :



L E A D   S H E E T

**FEE**

FEE $ 64 ⁰⁰ JJ
DAF $ 2 ⁰⁰
C-20                    20

**CODE
20**

**CODE
19**        NCPF Code 19   $ 60 ⁰⁰

**CODE
9____**

**D.T.T.**

NOTIFICATION SENT $4 ⓒ

**Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

TICOR TITLE CO
GLENDALE

**05 2684465**

Recording Requested By:

GreenPoint Mortgage Funding, Inc.
*[Company Name]*

And When Recorded Mail To:

GreenPoint Mortgage Funding, Inc.
*[Company Name]*

*[Name of Natural Person]*

981 Airway Court, Suite E
*[Street Address]*

Santa Rosa, CA, 95403-2049
*[City, State Zip Code]*

9714067 - 72      *[Space Above This Line For Recording Data]*

MIN 100013802026477986

# HOME EQUITY LINE OF CREDIT DEED OF TRUST
## Secondary Lien
### (Securing Future Advances)

Borrower has established a line of credit ("Home Equity Line of Credit") with Lender as evidenced by Borrower's Home Equity Line of Credit Agreement and Promissory Note dated the same date as this Security Instrument, and all renewals, extensions, modifications, replacements and substitutions thereof (collectively, the "Agreement"). Lender has agreed to make advances to Borrower under the terms of the Agreement. Such advances shall be of a revolving nature and may be made, repaid and remade from time to time. Borrower and Lender contemplate a series of advances to be secured by this Security Instrument. The total outstanding principal balance owing at any one time under the Agreement (not including charges and collection costs which may be owing from time to time) shall not exceed Sixty Eight Thousand and 00/100ths (U.S. $68,000.00) plus interest thereon (the "Credit Limit"). That sum is referred to in the Agreement as the Credit Limit. The entire indebtedness under the Agreement, if not paid earlier, is due and payable on November 15, 2020 or on such later date as may be permitted by Lender in writing, or at such earlier date in the event such indebtedness is accelerated in accordance with the terms of the Agreement and/or this Security Instrument.

**DEFINITIONS**

Words used in multiple sections of this Security Instrument are defined below and other words are defined in Sections 3, 10, 12, 17, 19, and 20. Certain rules regarding the usage of words used in this Security Instrument are also provided in Section 15.

**(A)** "Security Instrument" means this Home Equity Line of Credit Deed of Trust, which is dated November 1, 2005, together with all Riders to this document.

**(B)** "Borrower" is Leonard S. Collins, An Unmarried Man
. Borrower is the trustor under this Security Instrument.

California Home Equity Line of Credit Deed of Trust – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—                    Page 1 of 14                                        58919CA 08/02
www.compliancesource.com                                                                    ©2002, The Compliance Source, Inc



G P M W D 0 2 0 2 6 4 7 7 9 8 1 1 7

**(C)**   **"Lender"** is **GreenPoint Mortgage Funding, Inc.**.
Lender is a Corporation organized and existing under the laws of the State of New York.  Lender's address is **100 Wood Hollow Drive, Novato, CA 94945.**

**(D)**   **"Trustee"** is **Marin Conveyancing Corp.**.

**(E)**   **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)**   **"Agreement"** means the Home Equity Line of Credit Agreement and Promissory Note signed by Borrower and dated **November 1, 2005.**  The Agreement states Lender has agreed to make advances to Borrower under the terms of the Agreement, such advances to be of a revolving nature.  The total outstanding principal balance owing at any one time under the Agreement (not including charges and collection costs which may be owing from time to time under the Agreement) not to exceed the Credit Limit of **Sixty Eight Thousand  and 00/100ths** Dollars (U.S. **$68,000.00**) plus interest.  Borrower has promised to pay the total outstanding balance in Periodic Payments and to pay the entire debt in full not later than **November 15, 2020.**

**(G)**   **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)**   **"Account"** means the debt evidenced by the Agreement, plus interest, any other charges due under the Agreement, and all sums due under this Security Instrument, plus interest.

**(I)**   **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower *[check box as applicable]*:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Home Improvement Rider | ☐ Revocable Trust Rider | |
| ☒ Other(s) *[specify]* Occupancy Rider | | |

**(J)**   **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)**   **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)**   **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)**   **"Escrow Items"** means those items that are described in Section 3.

**(N)**   **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of,

05 2684465

the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Agreement and the Account.

**(P)** **"Periodic Payment"** means the amount due from Borrower to Lender each month for (i) principal and/or interest under the Agreement, and all late charges and other charges provided herein or authorized by the Agreement, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq* ) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to the escrow account requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Agreement and the Account do not qualify as a "federally related mortgage loan" under RESPA.

**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Agreement and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the prompt repayment of the Account evidenced by the Agreement, and all renewals, extensions and modifications of the Agreement, with interest thereon at the rate provided in the Agreement; (b) the payment of all other sums due under the Agreement, with interest thereon at the rate provided in the Agreement, (i) advanced to protect the security of this Security Instrument, (ii) incurred by Lender in connection with the enforcement of its rights under this Security Instrument and/or the Agreement, and/or (iii) required to be paid as set forth herein or in the Agreement; and (c) the performance of Borrower's covenants and agreements under this Security Instrument, the Agreement and any prior mortgage or deed of trust.

For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described real property located in the County                    of Los Angeles                                      :
                              *[Type of Recording Jurisdiction]*              *[Name of Recording Jurisdiction]*
As more particularly described in "Exhibit A", attached hereto and made a part hereof

Assessor's Identification Number: **8469-017-048**

which currently has the address of **836 Sparrow Lane**
                                                                    *[Street]*
**West Covina**                  , California **91790**                              ("Property Address").
             *[City]*                                      *[Zip Code]*

---

California Home Equity Line of Credit Deed of Trust – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—                    Page 3 of 14                                        58919CA 08/02
     www.compliancesource.com                                                            ©2002, The Compliance Source, Inc

G P M W D 0 2 0 2 6 4 7 7 9 8 1 1 7

05  2684465

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Other Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Agreement and if allowable under Applicable Law, any prepayment charges, late charges and other charges due under the Agreement. Payments due under the Agreement and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Agreement or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Agreement and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

**2. Application of Payments or Proceeds.** Payments are deemed received by Lender when received at the location designated in the Agreement or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14 or in such manner or location as required under Applicable Law. Except as otherwise described in this Section 2, and as permitted under Applicable Law, all payments accepted and applied by Lender shall be applied to the outstanding Account in the following order of priority: (i) any prepayment charges due under the Agreement and/or this Security Instrument if permitted by Applicable Law; (ii) amounts due under this Security Instrument to secure the amounts advanced under the Account and to protect Lender's security; (iii) any escrow payments under Section 3 of this Security Instrument, if Lender requires such payments; (iv) any late charges; (v) any other fees and charges other than finance charges; (vi) accrued and unpaid finance charges due under the Agreement; and (vii) any unpaid principal balance due under the Agreement.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. To the extent permitted by Applicable Law, voluntary prepayments shall be applied first to any prepayment charges and then as described in the Agreement.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Agreement shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3. Funds for Escrow Items.** Subject to Applicable Law, Borrower shall pay to Lender on the days Periodic Payments are due under the Agreement, until the Account is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Agreement, Lender may require that Community Association Dues, Fees,

05 2684465

and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 3. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender the Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA to mean the amount by which a current escrow balance falls short of the target balance at the time of escrow analysis, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA to mean the amount of the negative balance in the escrow account, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender. If under Section 21 the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

4.    **Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument. Borrower shall pay when due, all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien other than a lien disclosed to Lender in Borrower's application or in any title report Lender obtained which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such

G P M W D 0 2 0 2 6 4 7 7 9 8 1 1 7

05   2684465

proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with the Agreement, the Account and this Security Instrument, if allowed under Applicable Law.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Agreement. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with the Agreement, the Account and this Security Instrument, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5, shall be added to the unpaid balance of the Account and interest shall accrue at the rate set forth in the Agreement, from the time it was added to the unpaid balance until it is paid in full.

Subject to Applicable Law, all insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Agreement, up to the amount of the outstanding Account balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage not otherwise required by Lender, for damage to, or destruction of the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Agreement and the Account, up to the amount of the outstanding Account balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, and subject to the rights of any holder of a mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds, and shall be the sole obligation of Borrower. Subject to the rights of any holder of a mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument, if the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Lender believes that Borrower has abandoned the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance

California Home Equity Line of Credit Deed of Trust – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 6 of 14
©2002, The Compliance Source, Inc
58919CA 08/02

G P M W D 0 2 0 2 6 4 7 7 9 8 1 1 7

05 2684465



carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Agreement, the Account or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Subject to the rights of any holder of a mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument, Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Agreement, the Account or this Security Instrument, whether or not then due.

6.    **Preservation, Maintenance and Protection of the Property; Inspections.**    Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. If the Property is damaged, unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

7.    **Borrower's Home Equity Line of Credit Application.** Borrower shall be in default if, during the home equity line of credit application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Agreement, the Account and this Security Instrument. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

8.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**    If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which has or may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Lender believes that Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to. (a) paying any sums secured by a lien which has or may attain priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument if allowed under Applicable Law  These amounts shall bear interest at the rate set forth in the Agreement from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

9.    **Mortgage Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Agreement and the Account) for certain losses it may incur if Borrower does not repay the Account as agreed. Borrower is not a party to the Mortgage Insurance.

---

G P M W D 0 2 0 2 6 4 7 7 9 8 1 1 7

**05  2684465**



If Lender required Mortgage Insurance as a condition of entering into the Agreement and establishing the Account, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** The Miscellaneous Proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or any part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

If the Property is damaged and if the restoration or repair is economically feasible and Lender's security is not lessened, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

If Lender believes that the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, then Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization, if applicable, of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization, if applicable, of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** When Borrower (as that term is defined above) includes more than one person, Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Agreement (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Agreement without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security

G P M W D 0 2 0 2 6 4 7 7 9 8 1 1 7

05  2684465

Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Account Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, as allowed under Applicable Law, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender shall have the authority to impose additional fees and charges to perform services requested by or on behalf of Borrower, or to otherwise administer and service the Agreement and the Account. The additional fees and charges may include administrative costs incurred by Lender and/or in reimbursement of payments made by Lender to third parties. Such fees and charges may include, without limitation, any and all costs or fees associated with the origination and/or servicing of such Agreement and the Account, document copy or preparation fees, transmittal, facsimile or delivery fees, reconveyance and release fees, property inspections and returned check or insufficient funds charged in connection with payments made by or on behalf of Borrower under the Agreement and all other such fees for ancillary services performed by Lender for Borrower or at Borrower's request or for services necessitated by or resulting from Borrower's default or malfeasance relating to this Security Instrument or the Agreement or incurred by Lender or assessed upon Borrower pursuant to the provisions of this Security Instrument or the Agreement. Such fees and charges shall be secured by this Security Instrument up to the amount of the Credit Limit and, unless Borrower and Lender agree to other terms of payment, shall bear interest from the date assessed by Lender at the rate stated in the Agreement, and in effect from time to time, and shall be payable, with interest, immediately following written demand from Lender to Borrower requesting payment thereof. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law. The absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.

If either the Agreement or the Account is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other charges collected or to be collected in connection with the Agreement and the Account exceed the permitted limits, then: (a) any such charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to Borrower, which Lender may accomplish by reducing the principal owed under the Agreement or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Agreement). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower may have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Agreement conflicts with

GPMWD02026477798117

05 2684465

Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Agreement which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Agreement and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Agreement as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, as allowed under Applicable Law; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of the Agreement and the Account; Change of Loan Servicer; Notice of Grievance.** The Agreement and the Account, or a partial interest in the Agreement and the Account (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Agreement and this Security Instrument and performs other mortgage loan servicing obligations under the Agreement, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Agreement and the Account. If there is a change of the Loan Servicer, if required under Applicable Law, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Agreement and the Account are sold and thereafter the Agreement and the Account are serviced by a Loan Servicer other than the purchaser of the Agreement and the Account, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the purchaser of the Agreement and the Account unless otherwise provided by the purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take

GPMWD020264779811 7

05 . 2684465

corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section 19. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

20. **Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including, but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Events of Default; Acceleration; Remedies.** The occurrence of any one or more of the following events shall, at the election of Lender, constitute an "Event of Default," and shall entitle Lender to terminate the Agreement and the Account and accelerate the indebtedness secured hereby: (a) any Borrower engages in fraud or material misrepresentation, whether by action or omission, in connection with any phase of the Agreement; (b) Borrower fails to meet the repayment terms set forth in the Agreement; or (c) Borrower's action or inaction adversely affects the Property or Lender's security interest, including, but not limited to, Borrower's actions or omissions that constitute "Events of Default" under the Agreement, or Borrower's failure to perform any material covenants or agreements contained in this Security Instrument.

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies



G P M W D 0 2 0 2 6 4 7 7 9 8 1 1 7

05 2684465

of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.    Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.  Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22.  **Reconveyance.**  Upon request from Borrower and upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes and agreements evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it.  Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.  If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

23.  **Substitute Trustee.**  Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located.  The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.  This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

24.  **Statement of Obligation Fee.**  Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

25.  **Obligation to Advance.**  Lender's obligation to advance funds to Borrower upon and subject to the terms stated in the Agreement after receipt of a Credit Line Check or other request for an advance made in accordance with the Agreement shall be obligatory.

26.  **Request for Notice of Default and Sale.**  In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded _____, in Book _____ page _____ records of Los Angeles County, (or filed for record with recorder's serial number _____ , Los Angeles County) California, executed by _____

_____ as trustor (or mortgagor) in which

_____ , is named as beneficiary (or mortgagee) and

_____ as trustee be mailed to Name GreenPoint Mortgage Funding, Inc. at Address 100 Wood Hollow Drive, Novato, CA 94945.

**Notice:**  A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request.  If your address changes, a new request must be recorded

Signature _____

<center>

**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

</center>

```
G P M W D 0 2 0 2 6 4 7 7 9 8 1 1 7
```

<center>

05  2684465

</center>

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give notice to Lender, at Lender's address set forth on page two of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

——————— *[Signatures on Following Page]* ———————

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:



_____        _____ (Seal)
                                        Leonard S. Collins              -Borrower
Printed Name _____                                  Printed Name
                *(Please Complete)*

                                        _____ (Seal)
                                                                        -Borrower
                                                                        Printed Name
Printed Name _____
                *(Please Complete)*

                                        _____ (Seal)
                                                                        -Borrower
                                                                        Printed Name

                                        _____ (Seal)
                                                                        -Borrower
                                                                        Printed Name

——————— *[Space Below This Line For Acknowledgement* ———————

G P M W D 0 2 0 2 6 4 7 7 9 8 1 1 7

05  2684465

/5

State of _CALIFORNIA_ ⟩ §
County of _Los Angeles_ ⟩ §
§
On _11-27-05_       before me, _Sandee McMahon_      , personally appeared
LEONARD S COLLINS
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

Witness my hand and official seal.

(Seal)

_____
Notary Public                          [Printed Name]

My Commission Expires: _4-7-2008_

> SANDEE MC MAHON
> COMM. # 1478549
> NOTARY PUBLIC-CALIFORNIA
> LOS ANGELES COUNTY
> COMM. EXP. APRIL 7, 2008

California Home Equity Line of Credit Deed of Trust – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—                     Page 14 of 14                              58918CA 08/02
www.compliancesource.com                                                        ©2002, The Compliance Source, Inc.

G P M W D 0 2 0 2 6 4 7 7 9 8 1 1 7

05 2684465

**Loan Number: 0202647798**

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 1st day of November, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **GreenPoint Mortgage Funding, Inc.**

(the "Lender")

of the same date and covering the Property described in the Security Instrument and located at·

**836 Sparrow Lane, West Covina, CA 91790**
*[Property Address]*

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

**Robindale Villas**
*[Name of Condominium Project]*

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code or regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the monthly payment to Lender of the yearly premium installments for property insurance on the

Multistate Condominium Rider — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3140 01/01
—THE COMPLIANCE SOURCE, INC.—           Page 1 of 3           14502MU 08/00
www.compliancesource.com           ©2000, The Compliance Source, Inc

G P M W D 0 2 0 2 6 4 7 7 9 8 1 1 7

Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C.  Public Liability Insurance.  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D.  Condemnation.  The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E.  Lender's Prior Consent.  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:  (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F.  Remedies.  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them.  Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Multistate Condominium Rider — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3140  01/01
—THE COMPLIANCE SOURCE, INC.—                                   Page 2 of 3                                  14502MU 08/00
www.compliancesource.com                                                                    ©2000, The Compliance Source, Inc.

G P M W D 0 2 0 2 6 4 7 7 9 8 1 1 7

05  2684465

*18*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)     _____ (Seal)
Leonard S. Collins                -Borrower                                -Borrower


_____ (Seal)     _____ (Seal)
                                  -Borrower                                -Borrower


*[Sign Original Only]*

Multistate Condominium Rider — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3140 01/01
—THE COMPLIANCE SOURCE, INC.—                           Page 3 of 3                        14502MU 08/00
        www.compliancesource.com                                                 ©2000, The Compliance Source, Inc.

G P M W D 0 2 0 2 6 4 7 7 9 8 1 1 7

**05  2684465**

*r9*

**Loan Number: 0202647798**

# OCCUPANCY RIDER TO MORTGAGE/
# DEED OF TRUST/SECURITY DEED

THE OCCUPANCY RIDER is made this 1st day of November, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to GreenPoint Mortgage Funding, Inc. (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**836 Sparrow Lane, West Covina, CA 91790**
("Property Address")

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows.

1.  That the above-described property will be personally occupied by the Borrower as their principal residence within 60 days after the execution of the Security Instrument and Borrower shall continue to occupy the property as their principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld.

2.  That if residency is not established as promised above as well as in the Security Instrument, the Lender may, without further notice, take any or all of the following actions:

    a.  increase the interest rate on the Note by one-half of one percent (0.500%) per annum on a fixed-rate loan or increase the Margin on an Adjustable Rate Note by one-half of one percent (0.500%) per annum and to adjust the principal and interest payments to the amount required to pay the loan in full within the remaining term; and/or

    b.  charge a non-owner occupancy rate adjustment fee of two percent (2.00%) of the original principal balance and/or

    c.  require payment to reduce the unpaid principal balance of the loan to the lesser of (1) 70% of the purchase price of the property or (2) 70% of the appraised value at the time the loan was made. The reduction of the unpaid principal balance shall be due and payable within thirty (30) days following receipt of a written demand for payment, and if not paid within thirty (30) days will constitute a default under the terms and provisions of the Note and Security Instrument, and/or

---

Occupancy Rider to Mortgage/Deed of Trust/Security Deed
GreenPoint Mortgage Funding                    Page 1 of 2                    H74670MU 09/05
November 1, 2005



G P M W D 0 2 0 2 6 4 7 7 9 8 1 1 7

**05 2684465**

d.  declare a default under the terms of the Note and Security Instrument and begin foreclosure proceedings, which may result in the sale of the above-described property; and/or

e.  refer what is believed to be fraudulent acts to the proper authorities for prosecution. It is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements or reports for the purpose of influencing in any way the action of the Lender in granting a loan on the above property under the provisions of TITLE 18, UNITED STATES CODE, SECTIONS 1010 AND 1014.

It is further understood and agreed that any forbearance by the Lender in exercising any right or remedy given here, or by applicable law, shall not be a waiver of such right or remedy.

Should any clause, section or part of this Occupancy Rider be held or declared to be void or illegal for any reason, all other clauses, sections or parts of this Occupancy Rider which can be effected without such illegal clause, section or part shall nevertheless continue in full force and effect.

It is further specifically agreed that the Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies set forth above, including but not limited to, reasonable attorney's fees.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Occupancy Rider.



_____ (Seal)          _____ (Seal)
Leonard S. Collins              -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

**Occupancy Rider to Mortgage/Deed of Trust/Security Deed**
**GreenPoint Mortgage Funding**                    Page 2 of 2                    H74670MU 09/05
**November 1, 2005**

GPMWD02026477798117

05 2684465

OUR REFERENCE: 35728-S

ORDER NO.: 9714067-72

# EXHIBIT "A"

*21*

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

THAT PORTION OF LOT 1 OF TRACT NO. 39733, IN THE CITY OF WEST COVINA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 969 PAGES 25 AND 26 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SHOWN AND DEFINED AS UNIT 27 ON THE CONDOMINIUM PLAN RECORDED FEBRUARY 19, 1981 AS INSTRUMENT NO. 81-182480, OFFICIAL RECORDS OF SAID COUNTY

PARCEL 2:

AN UNDIVIDED 1/41ST INTEREST IN AND TO LOT 1 OF TRACT 39733 EXCEPT THEREFROM THOSE PORTIONS SHOWN AND DEFINED AS UNITS 1 TO 41 INCLUSIVE ON SAID CONDOMINIUM PLAN

05-2684465

Exhibit "E"

1 of 2

**Bank of America**



**Home Loans**

PO Box 5170
Simi Valley, CA 93062-5170

**Account Number 022360007**

Property address
836 Sparrow Ln

0191717 01 AI 0.362 **AUTO   2 1 6951 91790-414036   700-P191841
H HO AC..1 2... 1.. 800 D1109
**LEONARD S COLLINS**
836 Sparrow Ln
West Covina, CA 91790-4140

## IMPORTANT NOTICE

### This Statement Includes a Past-Due Amount.

Please send a payment immediately. Access to your credit line may be affected while the past-due amount remains outstanding. If you have already sent a payment, please accept our thanks, and disregard this notice.

### Make Past-Due Payments a Thing of the Past.

MortgagePay on the Web allows YOU to make your monthly mortgage or Home Equity Line of Credit (HELOC) loan payment on-line each month. This service is free before or during the first third of your grace period. However, if allowed by applicable law, a $1.00 service charge will apply, if your online mortgage payment is made during the second third of your grace period and a $6.00 service charge will apply during the last third of your grace period. Check out our demo, at www.bankofamerica.com/customers, to see just how easy it is.

### Counseling Programs

Homeownership counseling programs are offered by both Bank of America, N.A. and by non-profit organizations that are approved by the Department of HUD. These non-profit homeownership counseling programs may be able to assist you concerning your delinquent loan. For Counseling Agencies in your area, call 1.800.569.4287 or 1.800.877.8339 (TDD for hearing impaired). For eligible applicants, completion of a counseling program is required for insurance pursuant to section 203 of the National Housing Act (12 U.S.C. 1709).

## ACCOUNT SUMMARY

| Loan Summary | |
| --- | --- |
| Average daily balance | $67,634.85 |
| Corresponding **ANNUAL PERCENTAGE RATE** | 6.2500% |
| Daily periodic rate | 0.01712% |
| Historical **ANNUAL PERCENTAGE RATE** | 6.2500% |
| Days in Cycle | 31 |
| **FINANCE CHARGE** | $359.02 |

| Payment Details | |
| --- | --- |
| Periodic **FINANCE CHARGE** | $359.02 |
| Principal payment due | $563.62 |
| Amount past due | $9,788.08 |
| **Minimum payment due: 09/25/2011** | **$10,710.72** |

(see next page for transaction details)

If you fail to make your Minimum Payment Due within the number of days set forth below in your payment coupon, from the Payment Due Date, you will be charged a late fee of 5% of the late payment.

---

## PAYMENT

We will credit your account the same day we receive your payment if received on a banking day (not including Saturday) by 5 p.m. in the time zone where the payment is to be mailed and addressed as shown in the payment coupon. Payments made on your account by check or other non-cash method, will be included in your "Available Credit" 10 days from receipt of payment. We may assess a late fee as described in your credit agreement if we do not receive your payment within 15 days of the payment due date.

As a reminder, failure to make your minimum payment by the payment due date could result in suspension or termination of your credit privileges.

6951-01-00-0191717-0001-0192200

| Account number  022360007   (3)
Leonard S Collins
836 Sparrow Ln |

SEE OTHER SIDE FOR IMPORTANT INFORMATION      6951

Bank of America, N.A.
PO BOX 515504
LOS ANGELES, CA 90051-6804

### HOME EQUITY LOAN

**Payment due    Sep 25, 2011      $10,710.72**
A late charge may be assessed 15 days from payment due date

| Additional Principal |
| --- |
| N/A |

Check Total

02236000730000107107200000000000

⑈586990058⑈022360007⑈

JAN-10-2012 15:04 FROM:      19725288473    TO:18187840608    P.2/2

Exhibit "F"

B6A (Official Form 6A) (12/07)

In re    **Leonard Sydney Collins**                                    Case No. ___**2:11-bk-58200**___
                                                    Debtor

# SCHEDULE A - REAL PROPERTY - AMENDED

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Residence:**<br>**Location: 836 Sparrow Lane, West Covina CA 91790** | **Fee simple** | - | **205,000.00** | **357,817.00** |

**FMV is based on comparables**

**Payments are due on the first late on the sixteenth.**

|  |  |  |
|---|---|---|
| Sub-Total > | **205,000.00** | (Total of this page) |
| Total > | **205,000.00** | |
|  | (Report also on Summary of Schedules) | |

___0___  continuation sheets attached to the Schedule of Real Property

Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com                                    Best Case Bankruptcy